COVINGTON, Judge.
This is a suit for personal injury and property damages arising out of an inter-sectional collision between a Jeep owned and driven by Daniel G. Champagne, plaintiff, and a Mack truck and trailer owned by defendant Forest Products Transport, Inc., operated by its driver, defendant Hardy A. Turnage, and insured by defendant Empire Fire & Marine Insurance Company. The intersection where the collision occurred is the intersection of Louisiana Highways 10 and 21 in the Parish of Washington, which is controlled by traffic signals. Each driver claimed the traffic light was favorable to him as he entered the intersection. After the trial, the district court found that the accident was caused solely by the truck driver “in failing to maintain control of his vehicle as he approached this traffic controlled intersection,” and rendered judgment for the plaintiff.
We disagree. The record does not reveal a reasonable factual basis for the finding of the court below. We find that the trial court committed manifest error therein. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). To arrive at his conclusion, the trial judge had to ignore completely the testimony by deposition of the only disinterested eyewitness to the accident, Blandón Sorrell, a young man who was home on leave from the Marine Corps.
Mr. Sorrell testified that the traffic signal controlling plaintiff’s movement was red when plaintiff entered the intersection. He stated that Mr. Champagne ran the red light. According to the testimony of Gary Hickman, a police officer of the Bogalusa Police Department who investigated the accident, Blandón Sorrell told him that “he (Sorrell) saw the boy (Champagne) was not going to stop for the red light.” Sorrell stated to Officer Hickman that he was unable to get Champagne on the C.B. to warn him to stop after he saw that Champagne was not going to stop.
The applicable statutory law is LSA-R.S. 32:232.[1] Many cases have interpreted the *20 cited statute. In Mooring v. Pomeroy, 175 So.2d 435 (La.App. 2 Cir. 1965), writ denied, 248 La. 117, 176 So.2d 450 (1965), the defendant driver proceeded into the controlled intersection as the signal light changed from green to yellow (caution). The plaintiff entered the intersection as the signal changed from red to green, without waiting to permit the clearance of traffic. The Court found under the circumstances that the plaintiff was guilty of contributory negligence and denied recovery. In Weber v. Phoenix Assurance Company of New York, 273 So.2d 30 (La.1973), the Supreme Court affirmed the appeal court’s reversal of the trial court’s judgment, 256 So.2d 752 (La. App. 1 Cir. 1972), which had been in favor of the plaintiff. The Court of Appeal, First Circuit, denied plaintiff damages arising out of an automobile accident, finding that plaintiff’s contributory negligence was a bar to recovery. In Weber, the plaintiff, going north, observed that the light facing him changed to red as he approached the intersection; yet, he did not stop, but began to make a right turn. The defendant, going west, attempted to pass a stopped vehicle as the light changed from red to green. A collision occurred. The trial court found the defendant solely negligent. The Court of Appeal disagreed, finding that both drivers were negligent. The Court stated: “If either of the drivers in this case had fulfilled the duty placed on him by law, the accident would not have happened.” The Weber case is strikingly similar to the case at bar.
We hold that both drivers violated LSA-R.S. 32:232 in proceeding into this controlled intersection without first determining if it was safe to do so. The plaintiff ran the red light, and was thus negligent. Turnage was equally negligent in entering the intersection, either on amber or red, when he could easily see, or should have seen, that Champagne was not stopping for the red light. We find both drivers at fault in causing this accident. Hence, we hold that Champagne’s contributory negligence bars his right to the recovery of damages. See Close v. Lumbermens Mutual Casualty Company, 207 So.2d 571 (La.App. 3 Cir. 1968).
Accordingly, we reverse the judgment of the trial court, and render judgment in favor of defendants, Forest Products Transport, Inc., Hardy A. Turnage and Empire Fire & Marine Insurance Company, dismissing the suit of plaintiff, Daniel G. Champagne, at his costs.
REVERSED AND RENDERED.

. LSA-R.S. 32:232 provides, in pertinent part: “Whenever traffic is controlled by traffic-control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red and yellow shall be used, except for special pedestrian signals carrying a word legend, and said lights shall indicate and apply to drivers of vehicles and pedestrians as follows:
“(1) GREEN indication:
“(a) Vehicular traffic facing a circular green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right or left, shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited.
“(b) Vehicular traffic facing a green arrow signal, shown alone or in combination with another indication, may cautiously enter the intersection only to make the movement indicated by such arrow, or such other movement as is permitted by other indications shown at the same time. Such vehicular traffic shall yield the right-of-way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection.
***** 4!
“(2) Steady YELLOW indication:
“(a) Vehicular traffic facing a steady yellow signal alone is thereby warned that the related green signal is being terminated or that a red signal will be exhibited immediately thereafter and such vehicular traffic shall not enter or be crossing the intersection when the red signal is exhibited.
*20 ******
“(3) Steady RED indication:
“(a) Vehicular traffic facing a steady circular red signal alone shall stop at a clearly marked stop line, or if none, then before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection, and shall remain standing until an indication to proceed is shown except as provided in Subparagraph (c) of this Paragraph.
* * * * * *
“(c) Except when a sign prohibits a turn, vehicular traffic facing any steady red signal may cautiously enter the intersection to turn right, or to turn left from a one-way street into a one-way street, after stopping as required by Subparagraph (a) or Subparagraph (b) [traffic facing an arrow signal] of this Paragraph. Such vehicular traffic shall yield the right-of-way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection.”